Douglas W. **ANDERSON**, Appellant,

v.

**STATE** of Alaska, **DEPARTMENT OF REVENUE, Permanent Fund Dividend Division,** Appellee.

No. S–9418.

Supreme Court of Alaska.

July 20, 2001.

**27.** Id.

Anthony M. Sholty, Faulkner Banfield, P.C., Juneau, for Appellant.

Daniel N. Branch, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

PER CURIAM.

## I. INTRODUCTION

Douglas Anderson and his son appeal from a decision denying them their 1997 Permanent Fund Dividends. Because the record supports the department's finding that Anderson failed to overcome the presumption of non-residency for those absent from the state more than five years, the department's written decision was adequate, and the department did not misinterpret its own regulations, we affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

Douglas Anderson is an active-duty Coast Guard officer. Although he grew up in Kenai and Soldotna, Anderson moved away from Alaska in 1980 while still in high school. After high school, Anderson attended the United States Coast Guard Academy, where he listed his home state of record as Missouri. Anderson requested assignment to Alaska following his graduation from the Coast Guard Academy, but did not receive that assignment. Following his first tour of duty in Oregon, Anderson again requested assignment in Alaska and was assigned to Ketchikan in 1988. Anderson was stationed in Ketchikan from 1988 to 1991.

While stationed in Ketchikan, Anderson and his family established themselves as Alaska residents. Anderson registered to vote in Alaska, registered his vehicles in Alaska, and obtained an Alaska driver's license.

Anderson left Alaska again in 1991 after the Coast Guard assigned him to attend graduate school at the University of Oregon. Following graduation in 1993, Anderson accepted a teaching position at the Coast Guard Academy in Connecticut. Although Anderson listed an assignment in Alaska as his top priority in 1995, the Coast Guard assigned him to a station in West Virginia.

Anderson and his minor son applied for and received permanent fund dividends (PFDs) from 1992 through 1996. Anderson has never relinquished his "paper ties" to Alaska—he is still registered to vote, holds an Alaska driver's license, owns no real property in another state, and pays no state residence taxes in West Virginia. Between 1991 and 1997 Anderson, accompanied by his wife and son, made three trips to Alaska and spent a total of seven days in state. Over the same six years, Anderson accumulated 205 days of personal leave time. Anderson exercised his right to vote absentee in Alaska once during his period of absence.

Anderson and his son applied for 1997 dividends. The department denied Anderson's application, finding that he had not overcome the presumption of non-residency under 15 Alaska Administrative Code (AAC) 23.163 (1997). The department therefore denied Anderson's son's application because he had no eligible sponsor.

Anderson requested both an informal and formal appeal. At both levels, the department affirmed the denial, finding that Anderson had not overcome the presumption of non-residency. In its decisions, the department principally relied on evidence of Anderson's infrequent and short-duration return trips to Alaska during his absence, his short period of adult residency in Alaska as compared with his period of absence, and his career choice which resulted in an inability to control his residency.

Anderson appealed to the superior court. Superior Court Judge Larry R. Weeks found substantial evidence in the record to support the department's decision and therefore affirmed. Anderson appeals.

## III. DISCUSSION

### A. Standard of Review

■ We give no weight to the superior court's decision when it sits as an intermedi-

ate appellate court.[1] We review challenges to the adequacy of the evidence to support a department's findings of fact using the substantial evidence test.[2] Under that test, we will affirm the department's decision if we find " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[3] We will not reweigh evidence, but only review the record to ensure that substantial evidence existed to support the decision.[4] When an agency chooses between two conflicting determinations and there is substantial evidence in the record to support either conclusion, we will affirm the agency's finding.[5]

■■■ We apply a substitution of judgment standard to issues of law not within an agency's expertise—like statutory interpretation.[6] However, we do " 'not substitute [our] judgment for that of the agency with respect to the efficacy of [a] regulation nor review the wisdom of a particular regulation.' "[7]

■■■ In reviewing challenges to an agency's interpretation of its own regulation, we use the "reasonable and not arbitrary" test.[8] We will affirm the agency's interpretation under this deferential standard if the agency's interpretation is a reasonable one.[9]

B. *Substantial Evidence Supports the Department's Decision.*

Anderson challenges the department's finding that he did not overcome the presumption of non-residency in 1997—that he lacked an intent to return and permanently remain in Alaska.[10] The PFD eligibility regulations established a presumption against eligibility for people absent from Alaska more than five years.[11] Those regulations required that the department consider six factors to determine whether an individual has rebutted the presumption of ineligibility, including:

(1) the length of an individual's absence compared to the time the individual spent in Alaska before departing on the absence;

(2) the frequency and duration of return trips to Alaska during the absence; the fact that the individual has returned to Alaska in order to meet the physical presence requirement of AS 43.23.005(a)(4) is not sufficient in itself to rebut the presumption of ineligibility;

(3) whether the individual's intent to return or remain is conditioned upon future events beyond the individual's control, such as economics or finding a job in Alaska;

(4) any ties the individual has established outside Alaska, such as maintenance of homes, payment of resident taxes, vehicle registrations, voter registration, driver's licenses, or receipt of benefits under a claim of residency in another state;

(5) the priority the individual gave Alaska on an employment assignment preference list, such as those used by military personnel; and

(6) whether the individual made a career choice or chose a career path that does not allow the individual to reside in Alaska or

1. See *State, Dep't of Revenue, Permanent Fund Dividend Div. v. Wilder,* 929 P.2d 1280, 1281 (Alaska 1997).

2. See *id.* at 1281–82.

3. *Tinker v. Veco, Inc.,* 913 P.2d 488, 492 (Alaska 1996) (quoting *Fireman's Fund Am. Ins. Cos. v. Gomes,* 544 P.2d 1013, 1015 (Alaska 1976)).

4. See *Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992).

5. See *Brown v. State, Alaska Workers' Compensation Bd.,* 931 P.2d 421, 424 (Alaska 1997).

6. See *Church v. State, Dep't of Revenue,* 973 P.2d 1125, 1127 (Alaska 1999).

7. *Id.* (quoting *State, Dep't of Revenue v. Cosio,* 858 P.2d 621, 624 (Alaska 1993) (internal quotation omitted)).

8. *Handley,* 838 P.2d at 1233.

9. See *id.*

10. Former AS 43.23.095(8) (1997) established the "intent to return" requirement for eligible residents absent from the state.

11. *See* 15 Alaska Administrative Code (AAC) 23.163(f) (am.4/18/97) ("An individual whose absence or combination of absences under ... this section totaling more than five years is presumed not to have the intent to return to Alaska and remain permanently in Alaska.").

return to Alaska.[12]

The department found that Anderson had not prevailed on a majority of the six factors, and denied his application.

We applied the substantial evidence test in the PFD context in *State, Department of Revenue, Permanent Fund Dividend Division v. Wilder*.[13] In that case, Wilder—a military officer—challenged the department's decision that he failed to overcome the presumption of non-residency for five-year absences under 15 AAC 23.163(f).[14] We held that the department properly discounted "paper ties" to Alaska; correctly placed significance on the fact that Wilder had returned only once to Alaska during his absence; and appropriately relied on Wilder's failure to request reassignment to Alaska.[15] We stated that the department could properly consider "whether the individual made a career choice or chose a career path that does not allow the individual to reside in Alaska or return to Alaska," [16] and that "[w]ithout minimizing the unique nature and special demands of a career in the military, we conclude that Wilder has made a choice, and that choice is inconsistent with an intent 'at all times' to return to Alaska." [17] Considering the evidence in the record, we held that substantial evidence supported the department's decision, even where "competing inferences [could] be drawn from the testimony." [18]

Anderson's case is similar to *Wilder* in some of the underlying facts, but ultimately proves to be a much closer question. Like Wilder, Anderson is a military officer; has been absent from Alaska more than five years; and has maintained his paper ties to Alaska. Unlike Wilder, Anderson has requested assignment to Alaska for each tour of duty; has returned to Alaska for three brief visits during his absence; and has been assigned to Alaska once on active military duty. But, even with the more favorable

evidence of Anderson's intent to return, there is substantial evidence to support the department's finding that Anderson failed to rebut the presumption of non-residency.

### 1. Substantial evidence to support denial

■ The department principally relied on three factors when it denied Anderson's application: (1) the short period of Anderson's adult residency in Alaska as compared to his length of absence; (2) Anderson's career choice and his resulting lack of control with respect to residency; and (3) the infrequent and short duration of the return visits Anderson made to Alaska during his absence. Given this evidence, and the regulation requiring the department to give greater weight to the claims of individuals who make frequent, non-compulsory return visits to Alaska,[19] the department found that Anderson had not overcome the presumption of non-residency.

After reviewing the evidence in the record, we hold that there was sufficient evidence to support the conclusion that Anderson failed to overcome the presumption of non-residency. That evidence includes Anderson's infrequent and short-duration return visits, his choice to use only a small percentage of his leave time visiting Alaska, his inability to control his residency, his choice to vote absentee in Alaska elections only once during his absence, his decision to accept a transfer to the East Coast knowing that this would lessen his chances of an Alaska assignment, and his short duration of adult residency compared to his time of absence.

### 2. Substantial evidence to support approval

■ Anderson asserts that there was substantial evidence to find that he overcame the presumption of non-residency. Anderson may be correct on this point. As noted

12. 15 AAC 23.163(g)(1)-(6) (am.4/18/97).

13. 929 P.2d 1280 (Alaska 1997).

14. *See id.* at 1282.

15. *See id.* at 1282–83.

16. *Id.* at 1283.

17. *Id.*

18. *Id.*

19. *See* 15 AAC 23.163(h) (1997).

above, Anderson presented evidence that he has always maintained his "paper ties" to Alaska; did not establish any ties to other states; always listed an Alaska assignment as his first choice for his job preference; consistently expressed a subjective intent to return; and made the statutory minimum return trips to Alaska. The combination of this evidence and reasonable inferences arising from it could support a finding that Anderson overcame the presumption of non-residency. But, as noted above, we are obligated to affirm the decision of an agency where it chooses between two alternatives, both of which are supported by substantial evidence.[20] Accordingly, the existence of substantial evidence to support Anderson's position does not in itself permit us to reverse the department's decision.

### C. The Department Produced an Adequate Written Decision.

Anderson also challenges the adequacy of the department's final written decision. Specifically, Anderson alleges that the department "fail[ed] to consider each of the [relevant] factors" in 15 AAC 23.163(g), and "fail[ed] in its decisional document to provide an adequate explanation for its decision." We consider each allegation in turn.

#### 1. The department did not fail to consider evidence.

■ Anderson's first argument insists that the department failed to consider relevant evidence. By this he means that the department both totally failed to consider evidence and discounted evidence favoring his position when it drew inferences he believes were unwarranted. The substantial evidence standard of review prohibits this court from en-

tertaining Anderson's second avenue of·challenge.[21] His first is without merit.

Anderson cites three cases to support his position: *Southeast Alaska Conservation Council, Inc. v. State*,[22] *Kuitsarak Corp. v. Swope*,[23] and *Ninilchik Traditional Council v. Noah*.[24] However, these cases establish nothing more than the department's obligation to carefully consider the evidence before it and provide a thorough written decision addressing each important issue.

In Anderson's case, at each level of department review—initial application review, informal hearing, and formal hearing—the department considered all the evidence presented and made thorough findings of fact. The department also noted the evidence that supported Anderson's claim in each document it issued. Viewing the record as a whole,[25] it is clear that the department considered each piece of evidence Anderson insists was ignored.

#### 2. The department is not required to provide a written response to each piece of evidence.

■ Anderson charges that the department's findings of fact were inadequate because they did not specifically respond to each piece of favorable evidence he produced. Alaska law offers no support for this proposition.

The legislature's statutory mandate to the department with respect to dividend appeals decisions simply states: "Within 12 months after the administrative appeal is filed, the department shall provide the individual with a final written decision."[26] The legislature could have provided for more stringent requirements in the written decision, as it has in other contexts,[27] but it did not.

---

20. *See Brown v. State, Alaska Workers' Compensation Bd.*, 931 P.2d 421, 424 (Alaska 1997).

21. *See Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992).

22. 665 P.2d 544 (Alaska 1983).

23. 870 P.2d 387 (Alaska 1994).

24. 928 P.2d 1206 (Alaska 1996).

25. *See* AS 43.23.015(g) (authorizing judicial review of PFD appeals); AS 44.62.560(c) (listing all

written evidence and documents as part of the complete record).

26. AS 43.23.015(g).

27. *See, e.g.,* AS 19.10.170 ("The determination of the commissioner shall be supported by findings of fact which shall set out enough facts and circumstances to clearly justify the determination.").

The department's regulatory requirements for its own written decisions demand no more specificity. The department's regulation regarding informal appeal decisions states:

> After considering the facts, information, and arguments presented at the informal conference, the appeals officer shall promptly render a written decision. The decision must identify the issues in controversy for purposes of further appeal.[28]

And the formal decision must "contain[ ] the hearing officer's findings of fact and conclusions of law."[29] Neither regulation requires that the hearing officer respond in writing to each piece of evidence.

Finally, nothing in this court's case law imposes a duty on an agency of responding in writing to each piece of evidence presented by an appellant. This court has only stated that an agency's decisional documents must reflect the reasoning of the agency.[30]

Alaska's statutes, applicable regulations, and case law do not require the department to respond in writing to each piece of evidence presented by Anderson. Because the department clearly expressed its reasons for denying Anderson's application in the informal and formal appeals documents, we hold that the department's written decisions were adequate.

### D. The Department Did Not Misinterpret Its Regulations.

Anderson charges that the department erred in interpreting its eligibility regulation—15 AAC 23.163—by giving more weight to certain regulatory factors than others in ruling against him. While it is probably the case that the department did give more weight to certain factors than others, we conclude that the department has that discretion.

The regulation previously required the department to "consider the following factors"[31] and now specifically states that "the department will consider one or more of the following factors, as applicable."[32] The regulation has never required the department to evenly weigh each factor. Furthermore, it is difficult to conceive of a set of objective factors that, when weighted evenly, can determine such a subjective state of mind as an intent to return and permanently remain in Alaska. The regulation also formerly stated that "the department will give greater weight to the claim of an individual who makes frequent return trips to Alaska for noncompulsory reasons"[33] and now requires the department to "give greater weight to the claim of an individual who makes frequent voluntary return trips to Alaska."[34] This mandate has required the department to carefully scrutinize an applicant's pattern of return visits to Alaska—a factor the department weighed heavily against Anderson—and give that factor greater weight when it applies. Finally, in *Wilder* we approved of the department's decision to use its discretion in weighing the same regulatory factors, and we declined to perform this role as an appellate tribunal.[35]

Given the regulation's explicit language allowing the department to use its discretion in weighing the regulation's six listed factors, its mandate regarding consideration of the frequency and duration of return visits, and this court's decision in *Wilder*, the department did not arbitrarily interpret its own regulation by giving more weight to some regulatory factors of 15 AAC 23.163(g).

### IV. CONCLUSION

There is substantial evidence in the record to support the finding that Anderson did not overcome the presumption of non-residency. The department issued an adequate written decision. And the department did not misin-

28. 15 AAC 05.020(b) (1997).

29. 15 AAC 05.030(i) (1989).

30. *See Messerli v. State, Dep't of Natural Resources*, 768 P.2d 1112, 1118 (Alaska 1989).

31. 15 AAC 23.163(g) (am.4/18/97).

32. 15 AAC 23.163(g) (am.1/1/99).

33. 15 AAC 23.163(h) (am.4/18/97).

34. 15 AAC 23.163(h) (1999).

35. *See* 929 P.2d 1280, 1282–83 (Alaska 1997).

terpret its regulations. Therefore, the decision of the superior court is AFFIRMED.